[Cite as *State v. Wooden*, 2026-Ohio-2895.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                  :

      Plaintiff-Appellee,             :

                                             No. 24AP-237
v.                                             :        (C.P.C. No. 22CR-820)

John W. Wooden,                                 :        (REGULAR CALENDAR)

      Defendant-Appellant.            :

---

D E C I S I O N

Rendered on July 28, 2026

---

**On brief:** *Shayla D. Favor*, Prosecuting Attorney, and *Benjamin A. Tracy*, for appellee. **Argued:** *Benjamin A. Tracy.*

**On brief:** *Elizabeth Miller*, Public Defender, *Max Hersch*, and *Russell Patterson*, for appellant. **Argued:** *Max Hersch.*

---

APPEAL from the Franklin County Court of Common Pleas

LELAND, J.

{¶ 1} Defendant-appellant, John W. Wooden, appeals the decision of the Franklin County Court of Comon Pleas denying his motions to suppress evidence in a murder case. Because we hold that the trial court's actions were constitutionally valid, we affirm.

## I. Facts and Procedural History

{¶ 2} On December 22, 2021, Mohamed Adam disappeared after dropping his children off at school. Later that evening, his family received a video call from Adam but there was no sound, and a friend received a call from Adam's cell phone where two unknown men were speaking about payment for a truck. Adam had purchased a truck from

Wooden on October 31, 2021, but the truck had been stolen on November 2, 2021. Disturbed by the calls, family and friends began to search for Adam.

{¶ 3} On December 24, 2021, Adam's body was found near his van in a gated vacant lot owned by Wooden's family at 1486 Windsor Avenue, and he had been shot several times. Gunshot detection technology indicated several shots were fired near the vacant lot the night of December 22, 2021. Adam's cell phone case was located in the van containing his identification but no phone. Police acquired the call records for Adam's missing cell phone and obtained warrants for numbers in contact with Adam around the time of his disappearance and death. A cell phone associated with number (740) 647-7015 ("7015") was activated on December 19, 2021 in the name of James Cook and a subscriber's address of 1421 E. 18th Avenue, Columbus, Ohio 43211. Wooden used this address for vehicle registration, banking, and correspondence. A cell phone associated with number (614) 288-7925 ("7925") was in the name of Asia Miller and had been used by Wooden as a contact with his probation officer. Both cell phone numbers were used by Wooden, and location data showed that the cell phone numbers 7015 and 7925 were near the vacant lot at the same time the gunshots were reported. Police also obtained a warrant to search his residence where evidence including the murder weapon was recovered.

{¶ 4} On March 3, 2022, Wooden was indicted for charges associated with the death of Adam. On January 24, 2023, Wooden filed a motion to suppress evidence relating to and stemming from the search of cell phone records, and he filed a companion motion to suppress evidence from the search of his residence. Plaintiff-appellee, State of Ohio, opposed the motions.

{¶ 5} The trial court conducted a hearing on the motions to suppress on April 7, 2023. The state presented Columbus Division of Police Detective Earl Westfall as its sole witness, and Wooden did not present any evidence. The court allowed the parties to submit final arguments through post-hearing briefs and denied the motions, finding that Wooden lacked standing to challenge the phone-records search and that the good faith exception to the exclusionary rule applied. Alternatively, the court found that the affidavits presented in support of the search warrants established probable cause.

{¶ 6} The matter proceeded to a jury trial, and Wooden was convicted of murder, kidnapping, and aggravated robbery. The trial court found Wooden guilty of having a

weapon under disability and repeat violent offender specifications, but not guilty of unlawful use of a weapon by a violent career criminal and violent career criminal specifications. Wooden was sentenced to a total aggregate sentence of 73 to 78 and a half years to life imprisonment.

{¶ 7} Wooden now brings the instant appeal.

## II. Assignments of Error

{¶ 8} Wooden appeals and assigns the following as trial court error:

[I.] The trial court erred by overruling Mr. Wooden's motion to suppress the evidence associated with phone numbers 614-288-7925 and 740-647-7015.

[II.] The trial court erred by overruling Mr. Wooden's motion to suppress the evidence found at 96 N. Guilford.

[III.] Mr. Wooden was denied the effective assistance of counsel.

## III. Discussion

{¶ 9} Wooden's first and second assignments of error address motions to suppress, and our review usually presents a mixed question of law and fact. *State v. Burnside*, 2003-Ohio-5372. When considering a motion to suppress, the trial court, as the trier of fact, is thus in the best position to resolve factual questions and evaluate witness credibility. *State v. Brown*, 2019-Ohio-4753, ¶ 7 (10th Dist.). Therefore, when reviewing the denial of a motion to suppress, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *State v. Smith*, 2014-Ohio-712, ¶ 9 (10th Dist.). "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *State v. Foster*, 2019-Ohio-2580, ¶ 5 (10th Dist.). Our determination of whether the good faith exception applies is a question of law, and thus we accept the trial court's factual findings and review the application of the law to the facts de novo. *State v. Shaskus*, 2019-Ohio-2190 (10th Dist.).

{¶ 10} Before we tackle issues related specifically to the motion, it is necessary to address whether Wooden had standing to challenge the search of the cell phones. The Fourth Amendment to the United States Constitution provides in part: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable

searches and seizures, shall not be violated[.]" There are limits, however, on who may assert the right to suppress evidence from a search obtained in violation of the Fourth Amendment. Suppression of the product of a Fourth Amendment violation is restricted to only those whose rights were violated by the search itself. *Alderman v. United States*, 394 U.S. 165 (1969). "Fourth Amendment rights are personal in nature and may not be vicariously asserted by others." *State v. Dennis*, 1997-Ohio-372, ¶ 28.

{¶ 11} A defendant bears the burden of establishing standing, a legitimate expectation of privacy in the place or object searched. *Dennis*. This burden is "triggered only when the government argues that the defendant lacks a protected privacy interest affected by the search or seizure." *State v. Wintermeyer,* 2019-Ohio-5156, ¶ 13. Prior to the suppression hearing, the state did not challenge Wooden's standing regarding the cell phone numbers because it believed that Wooden was not contesting ownership. However, once Wooden refused to admit a Fourth Amendment interest in the cell phone numbers, the state challenged standing, thus placing the burden on the defendant to establish a constitutional interest.

{¶ 12} The record reflects, contrary to his denial, that Wooden had a fair opportunity to address Fourth Amendment standing. During the suppression hearing, the trial court directed the parties to submit post-hearing briefs, and asked if the defense was making an admission that the cell phone numbers belonged to Wooden. Defense counsel responded that no admission was being made because Wooden had standing based on the state's attributing the cell phone numbers to him. The state chose to respond in writing, and defense counsel acknowledged that he would address standing in a post-hearing memorandum. Because the issue of standing was raised in the trial court, " 'the burden is on the defendant to establish standing.' " *State v. Pleasant*, 2025-Ohio-115, ¶ 66 (4th Dist.), quoting *State v. Burton*, 2017-Ohio-322, ¶ 12 (4th Dist.). Wooden was on notice that he must demonstrate that his own Fourth Amendment rights were violated and establish standing.

{¶ 13} In his post-hearing memorandum Wooden cited the automatic standing principle set forth in *Jones v. United States*, 362 U.S. 257 (1960) as the basis for challenging the search. In *Jones*, a defendant who denied ownership of drugs was granted standing because the fruits of a search was being used against him. *Id.* However, it is no longer

sufficient for a defendant to simply show that he is aggrieved by the introduction of such evidence without asserting a Fourth Amendment protected interest, and the automatic standing principle in *Jones* was expressly overruled in *United States v. Salvucci*, 448 U.S. 83 (1980). "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *State v. Horsley*, 2013-Ohio-901, ¶ 12 (4th Dist.). " '[T]o have standing to challenge a search or seizure, the defendant must have a reasonable expectation of privacy in the evidence seized.' " *State v. Camper*, 2023-Ohio-4673, ¶ 24 (10th Dist.), quoting *State v. Jackson*, 2004-Ohio-3206, ¶ 8. Wooden argued that alternative methods exist to prove a legitimate expectation of privacy, and contended the evidence does not have to come from a defendant. However, a defendant must independently present evidence of their subjective expectation of privacy through their conduct, not merely through litigation arguments or reliance on the state's evidence. *United States v. Mathis*, 738 F.3d 719 (6th Cir. 2013). *See United States v. Jenkins*, 743 Fed.Appx. 636 (6th Cir. 2018) (defendant does not meet his baseline burden to demonstrate standing when he failed to present any evidence indicating an expectation of privacy). If a defendant denies ownership of a cell phone number, the state's attribution of a defendant's ownership does not relieve the defendant of their burden to establish standing. *State v. Williams*, 1995-Ohio-275. Instead, the defendant must affirmatively demonstrate a legitimate expectation of privacy in the cell phone if the state disputes their standing. *Pleasant*.

{¶ 14} Wooden argued that the state waived the issue of standing. We disagree. Waiver occurs when the state failed to raise the issue of standing at all during the trial court proceedings, and then attempts to raise it for the first time on appeal. *Wintermeyer*, 2019-Ohio-5156. Because Fourth Amendment standing is not jurisdictional in nature, there is no need to address standing at the outset of a suppression hearing. *Byrd v. United States*, 584 U.S. 395, 411 (2018).

{¶ 15} Courts have consistently held that only those whose personal rights have been violated may challenge a search. *Rakas v. Illinois*, 439 U.S. 128 (1978). A defendant who denies ownership in an item may not claim an actual expectation of privacy in the item. *State v. Hawkins*, 2016-Ohio-1404 (10th Dist.). A defendant who denies or disclaims

ownership of a cell phone number is unlikely to demonstrate a legitimate expectation of privacy in the phone under the Fourth Amendment. *State v. Campbell*, 2014-Ohio-5315 (12th Dist.) (defendant had no standing to challenge validity of warrant used to track defendant's wife's phone). *See State v. Crawford*, 2013-Ohio-1659, ¶ 45 (8th Dist.) (defendant did not have standing to challenge a search of codefendant's phone because "[he] could not challenge the cell phone records of anyone but his own"). A defendant lacked standing to challenge the seizure of a cell phone after he disclaimed ownership of the phone. *United States v. Jackson*, 2018 U.S. Dist. LEXIS 81132 (D.C. Mich. May 15, 2018). The Sixth Circuit concluded that a defendant who disclaimed ownership of luggage could not claim a legitimate expectation of privacy in its contents, as the disclaimer demonstrated an intent to disassociate from the property. *United States v. Tolbert*, 692 F.2d 1041 (6th Cir. 1982).

{¶ 16} Wooden did not direct our attention to any evidence from the suppression hearing to demonstrate standing. He did not testify or put on any witnesses. Wooden failed to present any evidence indicating a reasonable expectation of privacy in the cell phone data and has not met his baseline burden to demonstrate standing. We find that Wooden did not have standing to challenge the search warrants related to the cell phone numbers.

{¶ 17} The trial court also determined that even if Wooden had standing to challenge the cell phone records search, his challenge would fail. We agree.

{¶ 18} Both the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution protect individuals from unreasonable searches and seizures. *State v. Fielding*, 2014-Ohio-3105 (10th Dist.). The Fourth Amendment states the following:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

{¶ 19} To issue a search warrant, a magistrate or judge must have sufficient evidence to conclude that there is a fair probability that evidence of a crime will be found in the item to be searched. *State v. Castagnola*, 2015-Ohio-1565. Probable cause is defined as " ' "reasonable grounds for belief, supported by less than prima facie proof but more than

mere suspicion." ' " *State v. Maddox*, 2021-Ohio-586, ¶ 16 (10th Dist.), quoting *Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir. 1998), quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990).

{¶ 20} When determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, the issuing judge or magistrate must make a practical, common-sense decision under the totality of the circumstances set forth in the affidavit whether there is a fair probability that evidence of a crime will be found in a particular place. A search warrant and its supporting affidavits are presumed valid. *State v. Craine*, 2024-Ohio-2501 (10th Dist.).

{¶ 21} The Fourth Amendment provides no guidance on the fate of evidence obtained through a constitutional violation, but the United States Supreme Court created the exclusionary rule to police its use. *Davis v. United States*, 564 U.S. 229 (2011). The exclusionary rule precludes evidence obtained in violation of the Fourth Amendment from being used in court. *State v. Dickman*, 2015-Ohio-1915 (10th Dist.). "The exclusionary rule is designed to deter police misconduct that flagrantly, deliberately, or recklessly violates the Fourth Amendment." *State v. Hoffman*, 2014-Ohio-4795, ¶ 46.

{¶ 22} A limited exception to the exclusionary rule applies if law enforcement acted in good faith on a subsequently invalidated search warrant. *State v. Thomas*, 2018-Ohio-758, ¶ 29 (10th Dist.). This "good faith" exception, as recognized in *United States v. Leon*, 468 U.S. 897 (1984), and adopted in Ohio in *State v. Wilmoth*, 22 Ohio St.3d 251 (1986), provides that " 'the exclusionary rule should not be applied to bar use of evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause.' " *State v. Sears*, 2020-Ohio-4654, ¶ 28 (10th Dist.), quoting *Hoffman* at ¶ 29. "[A] warrant should be upheld when the issuing judicial officer had a substantial basis for believing that probable cause existed, regardless of what the reviewing court's independent determination regarding probable cause might be." *State v. Schubert*, 2022-Ohio-4604, ¶ 11. "Under the good-faith exception, evidence obtained during a search conducted pursuant to a warrant that is unsupported by probable cause will not be excluded if the officers who obtained the evidence acted reasonably in relying on the warrant." *State v. Dibble*, 2020-Ohio-546 ¶ 9. The good faith exception allows admission of evidence if a

police officer has a good faith belief that his or her actions are in compliance with the Fourth Amendment. *Id.*

{¶ 23} A trial court cannot apply the good faith exception to the exclusionary rule without first addressing whether there was probable cause for the search. *State v. George*, 45 Ohio St.3d 325 (1989). Ohio courts have consistently emphasized a two-step approach in analyzing the validity of a search warrant. First, the court must determine whether the affidavit supporting the search warrant provided a "substantial basis" for the issuing magistrate or judge to conclude that there was a "fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 329. If that determination is made, "a reviewing court then advance[s] to the good faith exception to the exclusionary rule." *State v. Harry*, 2008-Ohio-6380, ¶ 9 (12th Dist.). This approach ensures that the Fourth Amendment's protections are not undermined by prematurely applying the good faith exception. *Id.*

{¶ 24} However, the "good faith" exception has limits, and suppression of evidence is appropriate when any of the following applies: "(1) the supporting affidavit contained information the affiant knew to be false or would have known to be false but for reckless disregard for the truth; (2) the issuing judge wholly abandoned his [or her] judicial role; (3) the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, or (4) the warrant was so facially deficient in terms of particularity that the executing officers could not reasonably presume it to be valid." *State v. Battles*, 2021-Ohio-3005, ¶ 31 (10th Dist.). On appeal, Wooden only argues that the affidavit lacked probable cause.

{¶ 25} Under certain circumstances an officer will not have any reasonable grounds to believe a search warrant was properly issued. *Leon*, 468 U.S. at 922-23. When an affidavit "that states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge," it is commonly referred to as a bare bones affidavit. *United Sates v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996). To avoid being labeled as "bare bones," an affidavit must state more than " 'suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge' " that go beyond bare conclusions

and suppositions. *United States v. Christian*, 925 F.3d 305, 312 (6th Cir. 2019), quoting *United States v. Washington*, 380 F.3d 236, 241, fn. 4 (6th Cir. 2004).

{¶ 26} The affidavit in support of a search warrant must "name or describe the person to be searched or particularly describe the place to be searched, name or describe the property to be searched for and seized, state substantially the offense in relation thereto, and state the factual basis for the affiant's belief that such property is there located." Crim.R. 41(C)(1).

{¶ 27} The 7015 number is a burner phone associated with Wooden. The affidavit presented in support of the search warrant indicates that a murder occurred, and Adam's cell phone communicated with this number multiple times on the day Adam disappeared, which is also the date of the murder. Although no subscriber's name is listed, the affidavit demonstrated a nexus between 7015 and the murder, establishing a substantial basis to find probable cause.

{¶ 28} The 7925 number was used by Wooden but no call data was retrieved from that cell phone. Wooden's girlfriend was listed as the subscriber. However, this number moved in tandem with 7015 on December 22, 2021. The affidavit associated with 7925 states that the owner has been developed as a suspect, but little else. The state arguably conceded that the affidavit was weak.

{¶ 29} Assuming, arguendo, that the trial court erred in finding the affidavit was proper, any error in this regard would be harmless. *State v. Nelson*, 2017-Ohio-5568 (8th Dist.). Under the harmless error standard, "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Crim.R. 52(A). "Not every error requires that a conviction be vacated or a new trial granted." *State v. Morris*, 2014-Ohio-5052, ¶ 24. To determine harmless error, we must assess the error's prejudicial impact on the verdict and consider the weight of the remaining evidence. *Morris*.

{¶ 30} The Supreme Court of Ohio developed a three part harmless error analysis " 'questioning (1) whether the error had an impact on the verdict; (2) whether the error was harmless beyond a reasonable doubt; [and] (3) whether the remaining evidence establishes the defendant's guilt beyond a reasonable doubt.' " *State v. Hodge*, 2025-Ohio-4434, ¶ 92 (10th Dist.), quoting *State v. Carswell*, 2021-Ohio-3379, ¶ 57 (6th Dist.), citing *Morris*. The analysis was established to guide appellate courts in determining

whether an error has affected the substantial rights of a defendant, thereby requiring a new trial.

{¶ 31} Here, even assuming that the trial court erred in failing to suppress data from the 7925 number, the remaining evidence confirmed Wooden's guilt. *State v. Blue*, 2021-Ohio-1703 (5th Dist.). In light of the remaining evidence, the trial court's failure to suppress the 7925 cell phone records is harmless error. *State v. Williams*, 6 Ohio St.3d 281, 290 (1983). We have previously held that improper testimony regarding a search warrant was harmless when it "was cumulative of matters already properly before the jury, and appellant was not prejudiced by that testimony." *State v. Loch*, 2003-Ohio-4701, ¶ 14 (10th Dist.).

{¶ 32} We note that the state in this matter has limited its search to a review of cell phone subscriber information and location data and is not searching the physical contents of a cell phone. While searching a cell phone is subject to heightened Fourth Amendment protections due to the vast amount of personal information contained in a cell phone, the search of cell phone records and data now involves an analysis of whether an individual has a legitimate expectation of privacy in the information. *Smith v. Maryland*, 442 U.S. 735, 743 (1979).

{¶ 33} Cell-site location information ("CSLI") is data that records when a cell phone connects to radio antennas and can be used to allow for mapping of a cell phone's location and past movements. The information is collected and stored by wireless carriers. Law enforcement previously obtained CSLI through subpoena to the provider. *State v. Jones*, 2019-Ohio-2134 (10th Dist.). *See also State v. Burke*, 2019-Ohio-1951 (11th Dist.).

{¶ 34} The *Carpenter* decision recognized a narrow privacy interest in CSLI sought to determine a record of an individual's physical movements, and held "the Government must generally obtain a warrant supported by probable cause before acquiring such records." *Carpenter v. United States*, 585 U.S. 296, 316 (2018). The Supreme Court noted the prevalence of cell phones and recognized a new privacy interest in cell phone records that opened an " 'intimate window into a person's life, revealing not only his particular movements, but through them, his 'familial, political, professional, religious, and sexual associations.' " *State v. Giles*, 2021-Ohio-2865, ¶ 62 (6th Dist.), quoting *Carpenter* at 311.

{¶ 35} The *Carpenter* decision involved approximately 130 days of specific location information obtained without a warrant and provided the state with "an all-encompassing

record of the holder's whereabouts." *Carpenter* at 311.   Extended terms of electronic monitoring "impinges on expectations of privacy." *Jones v. United States*, 565 U.S. 400, 415 (2012) (warrantless acquisition of 28 days' worth of location data that tracked the defendant's every movement was found to be a search).   In separate opinions, justices would have found that while "relatively short-term monitoring of a person's movements on public streets accords with expectations of privacy that our society has recognized as reasonable," longer periods of electronic monitoring "impinges on expectations of privacy." *Id*. at 430 (Alito, J., concurring in the judgment); *Id*. at 415 (opinion of Sotomayor, J.). Accordingly, the Supreme Court of Ohio determined that one day of location data did not impact privacy concerns and was not a search.  *State v. Diaw*, 2025-Ohio-2323.

{¶ 36} The Fourth Amendment "prohibits unreasonable searches."  *In re B.A.R.*, 2013-Ohio-5712, ¶ 13 (10th Dist.).  Under the totality of the circumstances analysis, we find that the affidavits filed in support of the warrant contained sufficient information to establish probable cause and the requisite nexus between Adam's murder and the cell phones to be searched.  Even if probable cause did not exist, the search warrant was executed in good faith, and that the "good faith exception" to the exclusionary rule applies. *Leon*, 468 U.S. 897.   The motion to suppress the cell phone records was properly denied. Wooden's first assignment of error is overruled. Wooden's second assignment of error similarly challenges the trial court' s overruling his motion to suppress evidence recovered as a result of a search warrant at his Guilford Avenue residence.  We apply the same standard of review as for the cell phone data and review questions of law de novo. *State v. Taylor*, 2023-Ohio-2994 (4th Dist.).

{¶ 37} Wooden argued that the affidavit to search his residence was largely based on unconstitutional information retrieved from his cell phone and that the bare bones affidavits lacked probable cause.  However, having overruled appellant's first assignment of error and determined that the cell phone evidence was not subject to suppression, the use of the information derived from the phone search is permissible to support the residence search warrant.

{¶ 38} Our review of the record confirms that probable cause existed to issue a search warrant for Wooden's residence. The affidavit was presented to a judge on February 17, 2022, after law enforcement had the benefit of several weeks of investigation.

The affidavit stated Wooden sold Adam a box truck which was reported stolen a few weeks later. On the night of the murder, a friend of Adam received a call from someone using Adam's cell phone demanding money for the return of the box truck. Cell phone records reflected calls and texts between Wooden and Adam on the night of the murder, and the 7015 and 7925 cell phones were in the area of the murder when it occurred. The affidavit also stated that Adam's body was found in a lot owned by Wooden's father. Shell casings recovered from the murder scene matched casings fired during a bank robbery where the suspect drove an identical vehicle to Wooden's vehicle. Surveillance confirmed Wooden lived at the residence with Asia Miller and he was in contact with her close to the time of the murder.

{¶ 39} The issuing judge properly found a fair probability that evidence of the murder would be found at Wooden's residence and issued the search warrant. *State v. Spells*, 2024-Ohio-6052 (2d Dist.). Wooden's second assignment of error is overruled.

{¶ 40} In his third assignment of error, Wooden argued that trial counsel was ineffective by basing a standing argument on an overruled case. As discussed earlier, Wooden cited *Jones v. United States*, 362 U.S. 257 (1960) as the basis for standing in his post-hearing memorandum.

{¶ 41} We apply a two-step process in evaluating claims of ineffective assistance of counsel. A defendant must show that counsel's performance fell below an objective standard of reasonable representation and, but for counsel's deficient performance, the results of the proceeding would have been different. *State v. Waddell*, 2014-Ohio-4829 (10th Dist.). Both prongs must be established, and "it is unnecessary for a court to approach the inquiry in the same order or to address both components of the inquiry if the defendant makes an insufficient showing on one of the components." *State v. Barker*, 2010-Ohio-2191, ¶ 31 (10th Dist.).

{¶ 42} Prejudice is established if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Prejudice is not presumed merely because an attorney relied on an overruled case. A defendant must show that the reliance on the overruled case had a material impact on the outcome of the proceedings, and requires more than speculative or conceivable effects on the outcome. Ineffective

assistance of counsel claims cannot be based on mere supposition or vague speculation of prejudice. *State v. Bunch*, 2024-Ohio-5085 (7th Dist.).

{¶ 43} A reviewing court affords great deference to the trial court's decision, and there is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *State v. Hamblin*, 37 Ohio St.3d 153 (1988). A claim for ineffective assistance may not be based on trial strategy and tactical decisions, regardless of whether a better strategy was available. *State v. Swick*, 2001-Ohio-8831 (11th Dist.).

{¶ 44} As part of counsel's approach to standing, counsel declined to stipulate Wooden's ownership of the cell phone numbers because the state attributed the cell phones to Wooden and counsel presumed standing would not be contested. Tactical decisions, even if debatable, are generally not considered deficient unless they are so egregious that they undermine the adversarial process. *State v. Ikharo*, 2003-Ohio-2319 (10th Dist.). Here, Wooden's counsel pursued a strategy, i.e., establish standing to challenge the cell phone data and residence search, without conceding any interest in the phones. Based on the record presented, counsel's approach fell within reasonable trial strategy.

{¶ 45} Wooden argued he was prejudiced because, but for counsel's error, the trial court would have found standing and he would have prevailed on his motion. However, the trial court found that even if Wooden had standing, his motion would fail. We have determined probable cause existed and the good faith exception applied earlier in this decision, and the trial court was correct. Because the result would be the same, there is no prejudice from counsel's actions, and this assignment of error is overruled. *State v. Prater*, 2019-Ohio-2535 (10th Dist.). *See also State v. Rosemond*, 2022-Ohio-111 (1st Dist.).

{¶ 46} Wooden's third assignment of error is overruled.

## IV. Conclusion

{¶ 47} Having overruled Wooden's three assignments of error, the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

DORRIAN and MENTEL, JJ., concur.